# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

Terrence T. Williams (#2020-2184),    )
                               )
             Plaintiff,     )
                               )     No. 18 C 2600
     v.                   )
                               )     Hon. Franklin U. Valderrama
Rose Albano, et al.,            )
                               )
            Defendants.    )

## MEMORANDUM OPINION AND ORDER

Defendants Coppes, Davis, Hunckler,[1] Musur, Spata, and Suggs moved for summary judgment in this detainee excessive force/failure to intervene case (R. 134, Defs.' Mot. Summ. J.), and Plaintiff has responded (R. 144, Pl.'s Resp. Mot. Summ. J.; R. 145, Pl.'s Resp. Memo. Summ. J.; 147, Pl.'s Exhs.).[2]  For the reasons that follow, the motion for summary judgment is denied as to Defendant Coppes and granted as to Defendants Davis, Hunckler, Musur, Spata, and Suggs.

## I.      Background

Plaintiff Terrence T. Williams, a detainee at the Will County Adult Detention Facility ("WCADF") brought this *pro se* civil rights complaint, 42 U.S.C. § 1983. Plaintiff sued 13 officers at the jail, alleging that members of the Emergency Response Team ("ERT") used excessive force against him and that certain other

---

[1]Documents attached to Defendants' motion for summary judgment indicate this officer's last name is spelled Hunckler, rather than "Hunkler" as reflected on the docket.

[2]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

officers failed to intervene in that use of force. Relevant to this motion, Plaintiff alleged that Defendant Derek Coppes was a member of the ERT and used excessive force against him during the March 19, 2018 incident. *See* R. 56, Pl.'s Sec. Am. Compl. at 3, 5. He further alleged that Defendants Davis, Hunckler, Musur, Spata, and Suggs were present and failed to intervene. *Id.* at 2, 4. These Defendants argue that they are entitled to summary judgment either because they were not personally involved in the excessive use of force and/or did not have a reasonable opportunity to intervene in the use of force. Defendants Davis, Suggs, Hunckler, and Spata argue in the alternative that they are entitled to summary judgment, because Plaintiff failed to exhaust his administrative remedies as to his claims against them.

### A. Northern District of Illinois Local Rule 56.1

Local Rule 56.1 sets out a procedure for presenting facts pertinent to a party's request for summary judgment pursuant to Fed. R. Civ. P. 56. Specifically, Local Rule 56.1(a)(3) requires the moving party to submit "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to judgment as a matter of law." *Petty v. City of Chicago*, 754 F.3d 416, 420 (7th Cir. 2014). Each paragraph of the movant's statement of facts must include "specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." L.R. 56.1(a). The opposing party must file a response to each numbered paragraph in the moving party's statement, "including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." L.R.

56.1(b)(3)(B). "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." *Id.* The nonmoving party may also present a separate statement "consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon." L.R. 56.1(b)(3)(C).

The district court may limit its analysis of the facts on summary judgment "to evidence that is properly identified and supported in the parties' statements." *Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings."); *see also Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Plaintiff's status as a *pro se* litigant does not excuse him from complying with Local Rule 56.1. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x. 642, 643 (7th Cir. 2011) (unpublished) ("Though courts are solicitous of pro se litigants, they may nonetheless require strict compliance with local rules.").

Because Plaintiff is proceeding *pro se*, Defendants served him with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" as required by Local

3

Rule 56.2. *See* R. 137, Notice. Plaintiff submitted a response in which he contests aspects of Defendants' affidavits and the affidavit of Sgt. Richards concerning the Plaintiff's grievances regarding this incident. *See* Pl.'s Resp. Mot. Summ. J. But the response does not meet the requirements of Local Rule 56.1 in that it does not provide a response to each numbered paragraph of the Defendants' Statement of Fact, including, in the case of disagreement, a citation to the record. Plaintiff later submitted a belated and defective response to Defendants' Statement of Facts that the Court struck. R. 160, Pl.'s Sec. Resp.; R. 165, 12/21/2020 Order.[3] The Court will therefore accept Defendants' Statement of Facts to the extent it is supported by the record. *See Cady*, 467 F.3d at 1060 (district court properly rejected Rule 56.1 statement that did not comply with the local rule); *Milton v. Slota*, 697 F. App'x 462, 464 (7th Cir. 2017) (unpublished) ("[T]he [district] court was entitled to strictly enforce the local rule, even against a pro se litigant, by deeming uncontroverted statements of material fact admitted for the purpose of deciding summary judgment.").

Defendants have treated Plaintiff's first factual response as a Statement of Additional Facts and responded to it (R. 153, Defs.' Reply), and the Court will do the same for the sake of clarity. However, while the Court liberally construes these submissions, many of the purported factual statements submitted by Plaintiff are irrelevant, argumentative, consist of legal conclusions or conclusory statements, or

---

[3] The Court also informed Plaintiff in that Order that it would disregard any further filings in which Plaintiff attempted to revise or supplement his summary judgment response. *See* 12/21/2020 Order.

are not supported by admissible evidence. The Court will entertain Plaintiff's factual statements only to the extent they are supported by the record or he could properly testify about the matters asserted. *See Sistrunk v. Khan*, 931 F. Supp. 2d 849, 854 (N.D. Ill. 2013).

The Court therefore will recite the facts in Defendants' Local Rule 56.1(a)(3) statement and Plaintiff's factual assertions that are supported by his record citations or about which he could testify, and then decide whether Defendants are entitled to summary judgment on those facts. With these guidelines in mind, the Court turns to the facts of this case.

### B. Factual Background

### i. The Incident

In March 2018, the time of the incident, Plaintiff Terrence T. Williams was a pretrial detainee at the WCADF (Plaintiff is still a pretrial detainee at WCADF) as of the date of this Order). *See* R. 135, Defs.' SOF ¶ 1. Defendants Coppes, Hunckler, Musur, Spata and Suggs are all deputy correctional officers or command staff assigned to the WCADF and were working in that capacity on March 19, 2018. *Id.* ¶ 2. As of that date, Defendant Davis was employed by the Will County Sheriff's Office as a patrol deputy. *Id.* ¶ 3.

Plaintiff was confined in the Medical Unit of the WCADF on March 19, 2018. *Id.* ¶ 6. In his deposition, he identified Hunckler, Spata, Suggs, Davis, and Musur as the pod officers for the Medical Unit, although not all were assigned to Plaintiff's dayroom. *Id.* ¶ 7. The Medical Unit is quite large and has multiple wings. *Id.*

5

At about 9:25 p.m., Plaintiff threw a substance he identified as water (he received a disciplinary report alleging it was urine) into a nearby cell occupied by an inmate named Fuentes. *Id.* ¶ 8; *see also* R. 135-1, Pl.'s Dep. at 6:3–11. Deputy Hunckler ordered Plaintiff to lock down, but Plaintiff refused, instead putting on what Hunckler described as an "extravagant show," so that the ERT would respond. Defs.' SOF ¶ 9.[4] Deputy Hunckler called the ERT, which entered the Medical Unit at 9:32 p.m. *Id.* ¶ 10.

Plaintiff testified that as the ERT members gathered outside the dayroom, he initially refused "a couple" of orders to lock down but then "hurried up" and ran to his cell. *Id.* ¶ 12; *see also* Pl.'s Dep. at 13:7–17. Plaintiff testified that he locked down either just before or as the ERT members entered the Medical Unit. Defs.' SOF ¶ 12; *see also* Pl.'s Dep. at 11:23–12:1; 13:14–17. When the ERT members arrived at Plaintiff's cell, either Deputy Cortese or Deputy Coppes (Plaintiff thought it was Deputy Cortese but was not sure) ordered Plaintiff to get on his knees with his ankles crossed. Defs.' SOF ¶ 13; *see also* Pl.'s Dep. at 14:5–17. Plaintiff testified that he was in "full compliance" when officers entered the cell, but officers beat him. *See* Pl.'s Dep. at 14:24–15:3; 19:1–20:22.

### ii. Defendants' Whereabouts and Involvement

Plaintiff was facing away from the cell door when the ERT members came in, so he was not able to list all of the officers who were in his cell, although he stated

---

[4] Plaintiff apparently hoped that by doing so he would be separated from inmate Fuentes, with whom he did not get along. *See* Pl.'s Dep. at 8:20-9:22.

that "they were deep" in the cell and that Sgt. Albano was standing by. Defs.' SOF at ¶ 14; *see also* Pl.'s Dep. –at 16:8–13; 26:18–27:18.

Plaintiff could not say where Deputy Suggs and Deputy Davis were, other than they were in the vicinity. Pl.'s Dep. at 23:24, 24:1–5. Specifically, as to the location of Deputy Suggs, Plaintiff testified: "They were all around. They were in the vicinity. I was just so beat up . . . I could barely see out of my eyes." Pl.'s Dep. at 24:3–7. Plaintiff added that he was not sure where Suggs was during the alleged assault by the ERT members, other than in the Medical Unit, but afterward "he kept coming in and antagoniz[ing] me." *Id.* at 24:21–25:3.

As to Deputy Davis, Plaintiff reiterated that he was facing forward when officers came into the cell and testified: "Only reason why I remember a few faces is because I looked through the glass, I put my face to the glass to see who it was and recognized voices, and I could see a little bit after that, after I took the beat[ing]. Other than that, I really could not, like, see everybody, everyone['s] position." *Id.* at 24:13–19. Deputy Davis submitted an affidavit in which he stated that at the relevant time (on March 19, 2018), he was a deputy assigned to the Patrol Division. Defs.' SOF at ¶ 17. On that date, he and Deputy Wagner responded to the WCADF at 10:06 p.m. to investigate a detainee-on-detainee battery. *Id.* at ¶¶ 18–19; *see also* R. 135-3, Davis Aff.[5] Sgt. Musur escorted Deputy Davis to the Medical Unit to interview the involved detainees, Plaintiff and Fuentes. Defs.' SOF ¶ 20 (citing Davis

---

[5] Although not stated, the arrival time appears to have been taken from Officer Activity Log. *See* R. 135-2, Coppes Aff. at 6–7

Aff. ¶ 4). Deputy Davis wrote a case report, #18-3503, which he states is true and correct and which he relied upon to refresh his recollection about the events that occurred. Davis Aff. ¶¶ 5–6. Deputy Davis left the Medical Unit at 10:16 p.m.[6] Davis Aff. ¶ 7. He avers that he never had physical contact with Plaintiff on March 19, 2018 and was not present during the ERT response. *Id.* at ¶ 23. In his Statement of Additional Material Facts, Plaintiff does not dispute Deputy Davis's version of events, at least in so far as Deputy Davis asserts that he had no physical contact with Plaintiff on the date in question. *See* R. 144, Pl.'s SOAF ¶ 2. Rather, Plaintiff seems to assert that Deputy Davis must have been involved in or aware of the alleged excessive use of force, because Plaintiff was brought to court the next day on charges related to the incident with Fuentes. Pl.'s SOAF ¶ 3. Plaintiff provides no support for this speculation.

Deputy Coppes submitted an affidavit in which he stated that he was assigned to the ERT on March 19, 2018. Defs.' SOF ¶ 24; *see also* Coppes Aff. ¶ 2. Deputy Coppes worked the second shift, from 3 p.m. to 11 p.m. *Id.* To refresh his recollection, Deputy Coppes reviewed the Incident Report prepared by Deputy Cortese, #2018-968, which indicates that the ERT response began at 9:32 p.m. Defs.' SOF ¶ 26; *see* Coppes Aff. at 3–5. In reviewing the Incident Report and the Officer Activity Log, Deputy Coppes determined that he was not part of the initial ERT response and arrived at 9:41 p.m. Defs.' SOF ¶ 27; *see* Coppes Aff. at 6–7. Deputy Coppes states that he did not enter Plaintiff's cell with the other members of the ERT and did not physically

---

[6] Again, this time appears to have been taken from the Officer Activity Log. Coppes Aff. at 6–7.

engage with Plaintiff or restrain him in his cell. Defs.' SOF ¶ 28. He asserts that his physical contact with Plaintiff was limited to a subsequent pat-down search and removal of handcuffs and standing by while Plaintiff was examined by medical staff. *Id.* at ¶ 29. Plaintiff asserts in his Statement of Additional Facts that Deputy Coppes was present during the alleged use of excessive force and could have intervened, although he does not cite record evidence in support of this. *See* Pl.'s SOAF at ¶¶ 4–6. As noted above, Plaintiff testified that he thought it was Deputy Cortese giving orders during the initial ERT response, although it may have been Deputy Coppes. *See* Pl.'s Dep. at 14:13–17. At another point, he testified that Deputy Coppes was in his cell, "[w]hipping my little black ass." *See* Pl.'s Dep. at 17:23–18:2.

Plaintiff could not say where Deputies Hunckler, Spata, or Musur were during the time the ERT members were in his cell, other than that they were in the Medical Unit. Defs.' SOF ¶ 16; *see also* Pl.'s Dep. at 25:9–26:6.

In an affidavit, Sgt. Musur states that he was assigned as the second-shift reception sergeant at the WCADF on March 19, 2018. Defs.' SOF at ¶ 30; *see also* R. 135-4, Musur Aff. Sgt. Musur reviewed the Incident Reports prepared by Deputy Hunckler, # 2018-967, and Deputy Cortese, #2018-968, as well as the Officer Activity Log, to refresh his recollection, and determined that he was not assigned to the Medical Unit or part of the ERT response involving Plaintiff. Defs.' SOF ¶ 31. Sgt. Musur states that he was not on the Medical Unit during the initial ERT response, and his only involvement was escorting Deputy Davis to the Medical Unit to investigate the alleged battery by Plaintiff on Fuentes, which he did at 10:06 p.m. *Id.*

9

at ¶ 32.  Sgt. Musur left the Medical Unit at 10:16 p.m. and escorted Deputy Davis to reception.  *Id.* at ¶ 33.  Sgt. Musur avers that he never had physical contact with Plaintiff on March 19, 2018 and was not present during the ERT response.  *Id.* at ¶ 34.  Plaintiff, in his Statement of Additional Facts, appears to assert that he did see Sgt. Musur enter the Medical Unit and that Sgt. Musur knew that Plaintiff had been battered, although he does not cite to the record for these assertions, nor does he pinpoint a time when he saw Sgt. Musur.  *See* Pl.'s SOAF at ¶ 7.

Defendants also provided an affidavit from Sgt. Richards, the classification sergeant at the jail, who is familiar with the inmate grievance process that was in effect in 2018.  Defs.' SOF ¶¶ 35, 36; *see also* R. 135-5, Richards Aff.  Those procedures were set forth in the Inmate Handbook.  Defs.' SOF ¶ 36.

### iii.    Grievance Process

To file a grievance, detainees must use an Inmate Request Form (or Form 22); detainees can access these forms at the housing pod officer's desk.  Defs.' SOF ¶ 38; *see also* Richards Aff. at 4–5.  A grievance must fully explain what happened, the date, time, reason for the complaint, and the names of staff involved or who witnessed the incident.   Defs.' SOF ¶ 39. For lengthy grievances, the detainee may use additional sheets of paper.  *Id.*

A Form 22 is in triplicate, with white, yellow, and pink copies.  *Id.* at ¶ 40.  The white and yellow copies are turned in to the housing pod officer, who reviews, signs, and dates the forms; the detainee keeps the pink copy.  *Id.*  The pink copy kept by the detainee also has the signature and identification number of the housing officer who

received the grievance. *Id.* at ¶ 41. The housing officer then forwards the grievance to the Classification Office for review. *Id.* at ¶ 42. Upon receipt in the Classification Office, the grievance is date-stamped. *Id.* at ¶ 43.

Detainees who want to submit a grievance regarding misconduct at WCADF must do so within 48 hours. *Id.* at ¶ 44. Officials should then respond to the detainee within 15 days, unless the circumstances warrant an extension. *Id.* at ¶ 45. After receiving a response, the detainee has 48 hours to appeal using the Form 22, which should be marked as an appeal and returned to the housing unit officer. *Id.* at ¶ 46. If an appeal is filed, the classification sergeant or deputy chief of operations of support services will review and respond to it within 15 days, unless again, circumstances warrant an extension. *Id.* at ¶¶ 47–48.

Sgt. Richards reviewed the relevant portion of Plaintiff's classification file for the time period from March 19, 2018 through April 3, 2018. *Id.* at ¶ 49. Sgt. Richards found five relevant grievances, dated March 19, 2018 through March 23, 2018, two of which were marked as appeals. *Id.* at ¶¶ 50–51. Plaintiff did not provide the names of the officers involved in those grievances other than to identify Sgt. Albano and the second shift ERT members. *Id.* at ¶ 52. Plaintiff did not state in those grievances that Officers Hunckler, Suggs, or Spata were near his cell or had an opportunity to intervene in the alleged use of excessive force by ERT members. *Id.* at ¶ 53.

Plaintiff asserts, again without citation to the record, that Sgt. Michelle Moffett, who he describes as the "grievance sergeant" at the time of incident, failed to assign many of his grievances a grievance number, resulting in a failure to record

those grievances. *See* Pl.'s SOAF at ¶ 10. Plaintiff contends, as a general matter, that many of his grievances were not properly handled. *Id.* at ¶ 12. He also contends that it was difficult to include specific names of staff members within a 48-hour period. *Id.*

## II.    Legal Standard

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court does not weigh the evidence, judge credibility, or determine the truth of the matter, but rather determines only whether a genuine issue of fact exists. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). The Court must construe all facts in the light most favorable to the nonmoving party and resolve all doubts in favor of that party. *Id.* Regarding exhaustion, a hearing under *Pavey v. Conley* (*Pavey I*), 544 F.3d 739, 741–42 (7th Cir. 2008) is necessary only when there are disputed issues of fact that require further inquiry.

Material facts are determined by the substantive law underlying the claim, and a genuine issue is one that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.") Disputes about irrelevant or unnecessary facts do not count. *Id.* Summary judgment is warranted where a party fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party bears the burden

of proof at trial. *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The moving party may discharge its burden by demonstrating the absence of evidence to support the non-moving party's case. *Catrett*, 477 U.S. at 325.

### III. Analysis

### A. Merits

The claim against the moving Defendants is that they failed to intervene in the use of excessive force by other officers.[7] Liability under § 1983 requires a defendant's personal involvement in the alleged constitutional violation. *See Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015). Under certain circumstances, a state actor's failure to intervene in a constitutional violation may render him culpable under § 1983. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994); *see also Wilborn v. Ealey*, 881 F.3d 998, 1007 (7th Cir. 2018) (failure to intervene in unconstitutional use of force may subject officer to liability).

In order to establish a claim for failure to intervene, a plaintiff must demonstrate that the officer had reason to know excessive force was being used and had a realistic opportunity to prevent the harm from occurring. *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009); *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005). A realistic opportunity to intervene exists where the officer could have called for backup or help or at least cautioned the officer using excessive force to stop.

---

[7] In the case of Defendant Coppes, Plaintiff asserted in the Second Amended Complaint that he was directly involved in the excessive use of force, but at various points in his response, Plaintiff contends that this officer was either directly involved or failed to intervene. *See* Pl.'s SOAF at ¶¶ 5-6; Pl.'s Resp. Memo. Summ. J. at 2-3.)

*Abdullahi*, 423 F.3d at 774. Whether an officer had sufficient time to intervene or was capable of preventing the harm caused is generally a question for the trier of fact, unless a reasonable jury could not possibly find otherwise. *Id.*

### i. Defendant Coppes

First, as to Defendant Deputy Coppes, Plaintiff's theory as to why Coppes is liable for any excessive use of force or failure to intervene is unclear. Plaintiff sued Deputy Coppes for excessive use of force, and in his deposition testified that this officer was in his cell, "[w]hipping my little black ass." *See* Pl.'s Dep., at 17:23–18:2. Plaintiff further testified that it was Coppes, or more likely Cortese, who gave the orders when officers entered the cell. *Id.* at 14:13–17. In his memorandum in response, Plaintiff states that "it is for certain that ert [sic] Coppes were actively involved during and after the crucial event." *See* Pl.'s Resp. Memo. Summ. J. at 2. But, he goes on to write, "Plaintiff is for certain that *Cortese* gave the direct orders prior to excessive force being used." *Id.* Plaintiff then argues that the nine-minute difference in response time between Deputy Coppes and the other ERT officers and the lack of physical contact by Coppes, does not mean that Coppes was not involved. (*Id.*)

The record evidence shows that Deputy Coppes responded nine minutes after the other ERT members. But the record is not clear as to when the ERT response ended. Despite Plaintiff's shifting allegations as to Deputy Coppes' involvement, the Court cannot find as a matter of law that Deputy Coppes was not involved with the use of force or no opportunity to intervene in that use of force. Because he was facing

away from the cell door, Plaintiff could not identify all the officers who entered his cell. In such circumstances, a plaintiff claiming excessive force may be allowed to proceed to trial against all the officers who were present at the scene, on the theory that those who were not directly involved in the use of force could have intervened.

*Miller v. Smith*, 220 F.3d 491, 493 (7th Cir. 2000) is instructive here. In *Miller*, the plaintiff was arrested at a gas station and alleged that while he lay prone, one of the officers involved in the arrest kicked and punched him. 220 F.3d at 493. The plaintiff was unable to specify which officer struck him, but he contended that it was one of two officers, while another officer stood nearby. *Id.* at 495. The Seventh Circuit held that Plaintiff could proceed to trial against these three officers, because whichever officer was not responsible for the beating was "idly standing by." *Id.* If the plaintiff could show at trial that one officer attacked him while the others ignored a realistic opportunity to intervene, he could prevail on his claims. *Id.*

Here, because the record permits an inference that Deputy Coppes was present at the scene for some portion of the use of force against Plaintiff, summary judgment is denied as to Deputy Coppes.

### ii. Defendants Davis, Hunckler, Musur, Spata, and Suggs

Unlike Deputy Coppes, there is no evidence that the other officers who moved for summary judgment were involved with the ERT response in any manner. So, Plaintiff cannot rely on the theory put forth in *Miller* and must put forth evidence that these officers were in a position to intervene in the alleged excessive use of force. *See Colbert v. City of Chicago*, 851 F.3d 649, 659–60 (7th Cir. 2017) (officers were

15

entitled to summary judgment where ten officers participated in search of residence and plaintiff sued four of them for damaging his property but could not identify which officers were responsible for the alleged damage and which officers stood by); *Armstrong v. Maloney*, No. 08 CV 04398, 2012 WL 567427, at *7 (N.D. Ill. Feb. 21, 2012) (Chang, J.) (plaintiffs who were face down during search of their home could not recover from group of officers for excessive use of force or property damage because they could not establish which officers were involved or stood by, given that officers conducting the search were moving throughout the five-room apartment).

### 1) Defendant Davis

As to Deputy Davis, Plaintiff has not brought forth any evidence that Deputy Davis was present during the alleged excessive use of force or had a realistic opportunity to intervene in the use of that force. In his deposition, Plaintiff misidentified Deputy Davis as a pod officer at the jail when he was in fact a patrol deputy. *See* Pl.'s Dep. at 6:12–20. Plaintiff was unable to place Deputy Davis in or near his cell during the alleged use of force. His speculation that Deputy Davis must have been involved in the alleged excessive use of force, because Plaintiff was subsequently charged in relation to having allegedly thrown a liquid into Fuentes's cell does not make sense. Regardless, speculation or conjecture is insufficient to defeat a motion for summary judgment. *McCoy v. Harrison*, 341 F.3d 600, 604 (7th Cir. 2003).

Further, in his memorandum in response, Plaintiff concedes that Deputy Davis arrived at the WCADF after the use of force incident. *See* Pl.'s Resp. Memo. Summ.

J. at 1–2.  An officer who was not present at the scene of the use of force cannot be held liable for failure to intervene.  *See Flores v. Giuliano*, No. 12 C 162, 2014 WL 3360504, at *9 (N.D. Ill. July 9, 2014) (Feinerman, J.) (watch commander not present at the scene was entitled to summary judgment on failure-to-intervene claim); *Heard v. City of Chicago,* No. 10 C 01050, 2013 WL 1337167, at *5 (N.D. Ill. Mar. 29, 2013) (Chang, J.) (granting summary judgment for the defendant officer on excessive force and battery claims where the officer was not present by the plaintiff's own admission).

Plaintiff contends that Deputy Davis must have noticed his "brutally beaten" face while investigating the incident with Fuentes and faults him for failing to investigate the battery that had occurred to Plaintiff.  *See* Pl.'s Resp. Memo. Summ. J. at 1–2.  But Plaintiff had no constitutional right to an investigation of any excessive force that may have been used against him.  *See Rossi v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015) ("[M]ere inactivity by police does not give rise to a constitutional claim.") (citing *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 196 (1989) (Constitution "confer[s] no affirmative right to government aid")).  Plaintiff has not brought forth any evidence that Deputy Davis had a realistic opportunity to intervene in any use of excessive force against him.  Therefore, summary judgment is granted in Deputy Davis' favor.

### 2) Defendant Musur

Similarly, as to Sgt. Musur, Plaintiff states in his response brief that he saw this officer "before or after" the alleged use of excessive force occurred.  *See* Pl.'s Resp. Memo. Summ. J. at 2.  Plaintiff contends that Sgt. Musur was aware that excessive

force had been used against him and "in some way or another had the opportunity to address the circumstances of the event." *Id.* This is insufficient to defeat summary judgment considering the undisputed evidence that Sgt. Musur's only involvement in this matter was to escort Deputy Davis to the Medical Unit to investigate the alleged battery by Plaintiff on Fuentes. Summary judgment is granted in favor of Sgt. Musur.

### 3) Defendant Hunckler

Next, as to Defendants Hunckler, Plaintiff was unable in his deposition testimony to state where these officers were during the ERT response, other than somewhere in the admittedly large Medical Unit. In his response brief, Plaintiffs point out that Deputy Hunckler called for the ERT. He also contends, without pointing to any evidence in the record, that Hunckler later told Plaintiff that he had seen Plaintiff's injuries after the incident. *See* Pl.'s Resp. Memo. Summ. J. at 3. But even if that is true, that does not mean that Deputy Hunckler was in a position to intervene during the ERT response. Plaintiff has not brought forth sufficient evidence to demonstrate Deputy Hunckler's personal involvement in this incident, and thus, summary judgment is proper at to Deputy Hunckler.

### 4) Defendants Suggs and Spata

Similarly, as to Deputy Suggs and Deputy Spata, Plaintiff also did not place these officers in his cell during the ERT response. The mere fact that they were somewhere on the Medical Unit, which had multiple wings, does not indicate that they had a realistic opportunity to intervene in any excessive use of force. *See Valdez*

18

*v. Vill. of Brookfield, Ill.*, 2020 WL 2935125, at *7 (N.D. Ill. June 3, 2020) (Aspen, J.) (officers in another room during an arrest could not have intervened in alleged use of excessive force). Plaintiff further testified that Deputy Suggs antagonized him after the incident, but, even if true, this does not amount to a constitutional violation. *See*, *e.g.*, *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015) (most verbal harassment does not rise to the level of a constitutional violation). For these reasons, summary judgment is also granted as to Deputies Suggs and Spata.

### B. Exhaustion

Alternatively, the Court finds that summary judgment is also appropriate for Deputies Davis, Hunckler, Spata, and Suggs on the ground that Plaintiff failed to exhaust his administrative remedies as to these Defendants.

Pursuant to the Prison Litigation Reform Act ("PLRA"), inmates who bring civil rights complaints must first exhaust their administrative remedies within the correctional system. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999); *Pavey I*, 544 F.3d at 740. This requirement "is 'mandatory,'" and "a court may not excuse a failure to exhaust." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (internal citation omitted).

To fulfill the exhaustion requirement, an inmate must comply with the procedures and deadlines established by the correctional facility's policy. *Hernandez*

*v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016); *see also Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011) (in order to properly exhaust his remedies, an "inmate must file a timely grievance utilizing the procedures and rules of the state's prison grievance process."). "Grievances are intended to '[allow prisons] to address [issues] before being subjected to suit, [reduce] litigation to the extent complaints are satisfactorily resolved, and [improve] litigation that does occur by leading to the preparation of a useful record.'" *Maddox*, 655 F.3d at 721 (quoting *Jones v. Bock*, 549 U.S. 199, 219 (2007)).

In this case, it is undisputed that Plaintiff filed five grievances which are relevant to the incident. The Court has reviewed these grievances, and none mention Deputies Davis, Hunckler, Spata, and Suggs by name or by job title (Plaintiff apparently believed all these officers were housing officers, although Davis is not). *See* Musur Aff. at 6–10. Plaintiff also does not complain about officers having failed to intervene in the use of force. Rather, Plaintiff indicates that he was abused by second shift ERT members. *See*, *e.g.*, *id.* at 9.

It is undisputed that the facility's grievance procedure required inmates to provide the names of the staff involved or who witnessed the incident. In such circumstances, when "the inmate's grievance and the relevant circumstances do not allow even an inference that the inmate is complaining of a particular official, the grievance may be insufficient to exhaust the inmate's administrative remedies as to that official." *Houston v. Sargent Jones & Officer Simmons*, No. 14 C 9462, 2015 WL 9304489, at *5 (N.D. Ill. Dec. 22, 2015) (Kocoras, J.); *see Roberts v. Neal*, 745 F.3d

232, 234 (7th Cir. 2014) (grievance that did not name defendant or provide information that "should have identified him to the grievance officer" was fatally defective); *Ambrose v. Godinez*, 510 F. App'x 470, 472 (7th Cir. 2013) (unpublished) (district court "properly narrowed" case where grievances did not mention defendants "by name or inference").

Plaintiff contends as a general matter the grievance process at the WCADF is "greatly manipulated." *See* Pl.'s Resp. Memo. Summ. J. at 3. But he does not contend, or provide any supporting evidence, indicating that he filed grievances about the conduct of Deputies Davis, Hunckler, Spata, and Suggs, or that such grievances were improperly handled. He attached as an exhibit to his response certain grievances that he contends were improperly handled during his current stay at the facility (*see* Pl.'s Exhs.), but these grievances have nothing to do with the instant case. Because Plaintiff refers in his response to grievances concerning his 2018 stay at the facility that he previously submitted to this Court while housed in Pinckneyville Correctional Center, the Court has in an abundance of caution reviewed those grievances. *See* R. 53, Presentation of Correspondents [sic] 1; R. 54, Presentation of Correspondents [sic] 2. To the extent those grievances are legible, no additional grievances regarding this incident were found. Plaintiff's recitation of his various issues with the grievance process does not create a general issue of fact regarding whether he exhausted his administrative remedies as to these Defendants. As such, Defendants Davis, Hunckler, Spata, and Suggs are entitled to summary judgment on this ground as well.

### IV.    Conclusion

Defendants' Motion for Summary Judgment (R. 134) is denied as Defendant Coppes and granted as to Defendants Davis, Hunckler, Musur, Spata, and Suggs. The Court instructs the parties to file a Joint Status Report on or before 2/11/2021. The report should address whether the parties are willing to discuss settlement.

Date: 1/13/2021

Franklin U. Valderrama
United States District Judge